UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

____

STAFFORD LEE GILL,

        Plaintiff,        Case No. 1:14-cv-1052

v.        Honorable Janet T. Neff

AMY HOUTZ et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. §§ 1983, 1985 and 18 U.S.C. § 1962 (RICO). The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

I.      Factual allegations

Plaintiff Stafford Lee Gill presently is incarcerated at the Lakeland Correctional Facility (LCF).  He sues Amy Houtz, Bonita Hoffner, Linda Beckwith and (Unknown) Cline. Plaintiff alleges that Defendants violated his due process and equal protection rights when they "collectively and individually, engaged in a conspiracy in violation of the RICO statute, to deprive Plaintiff of his funds received from family and friends." (Compl., docket #1, Page ID#3.) According to Plaintiff, Defendants violated RICO when they conspired to deprive Plaintiff of his funds "under the ruse of a policy violation which did not permit or authorize their conduct (See [Michigan Department of Corrections (MDOC) Policy Directive (PD)] 04.02.105--Prisoner Funds Policy)." (*Id.* at Page ID#4.)  Plaintiff alleges that Defendants embezzled funds from his prisoner trust account without authorization or court order via the J-Pay Electronic Wire System (J-Pay).

Plaintiff alleges that the MDOC contracts with J-Pay to allow funds to be deposited in prisoner trust accounts via electronic wire transfer.  J-Pay does not advertise that there are any limitations on funds transferred to a prisoner.  Plaintiff received funds from family and friends via J-Pay on numerous occasions dating back to 2010.  These funds were deposited in Plaintiff's trust account.  Plaintiff never received any Notices of Package/Mail Rejection as required by MDOC PD 04.02.105, indicating that certain funds deposited into his trust account were not authorized.

On February 1, 2014 and thereafter, Defendant Cline, who Plaintiff alleges was impersonating an MDOC Inspector, issued a NOI[1] to conduct an administrative hearing regarding funds Plaintiff received via J-Pay on February 24, 2013.  These funds were deposited by a friend of

---

[1]Plaintiff does not explain what he means by NOI.  Presumably, a NOI is a notice of intent to conduct an administrative hearing.

Plaintiff's via a J-Pay transaction. Plaintiff complained about this process at the administrative hearing. Plaintiff alleges that Defendant Houtz, who conducted the hearing, did not follow MDOC policy when she conducted the hearing.

Plaintiff received numerous NOIs issued by Defendant Cline, who Plaintiff alleges, continued to "impersonate an MDOC Inspector without authorization to do so" and who continued to issue NOIs to Plaintiff "dating as far back as 2012."[2] (*Id.* at Page ID#5.) Each NOI was followed by an administrative hearing conducted by Defendant Houtz who upheld the NOIs and authorized removal of funds from Plaintiff's trust account "without a court order or legal authorization . . . as the NOIs issued by Defendant Cline and the subsequent hearings conducted by Defendant Houtz violated MDOC policy." (*Id.* at Page ID#5.)

On February 20, 2014, "to cover up the illegal conduct of Defendants Cline and Houtz," Defendant Beckwith issued a memorandum to LCF prisoners that J-Pay funds restrictions were being implemented. The memorandum stated, in part,

> [i]f the funds are rejected after transmittal (deposit), a hold shall be placed on the funds and the prisoner provided with a <u>notice of the rejection and</u> unless waived, a hearing in the same manner as funds received through the mail is required.

(*Id.*)

On February 28, 2014, Plaintiff sought relief from the Director's Office by submitting a "Request for a Declaration Ruling" as to the policy violations occurring at LCF.[3] Plaintiff sent a

---

[2]Although Plaintiff's allegations are not entirely clear, Plaintiff's allegation that he received NOIs "dating as far back as 2012," appears to mean that he received NOIs with respect to deposits made to his prisoner trust account dating as far back as 2012. (Compl., docket #1, Page ID#5.)

[3]In his Request, Plaintiff's chief complaint was that "there is nothing embedded in the policy [PD 04.02.105] which remotely allows a retroactive application [with respect to funds] received spent and . . . no longer available to a prisoner." (Ex. to Compl., docket #1-1, Page ID#25.) Plaintiff's claim was that LCF Administration had waited more than one year after the funds were actually deposited in Plaintiff's account before issuing a NOI with respect to those

copy of this Request to Defendants Hoffner and Beckwith.  Plaintiff subsequently received a letter from the Director's Office which explained that if he did not receive a ruling on his Request within 30 days, he could consider it to have been denied.

On March, 10, 2014, Defendant Beckwith, upheld the administrative hearing conducted by Defendant Houtz from Defendant Cline's NOI claiming that the funds were properly removed under PD 04.02.105.  However, in the administrative grievance process, Plaintiff pointed out that he never received a Notice of Rejection and his family and friends were never notified that their deposit of funds violated PD 04.02.105.

On March 24, 2014, Defendant Hoffner upheld the policy violations that occurred as a result of the "illegally issued NOI, the illegal administrative hearing, the illegal[ly] issued memo from Defendant Beckwith and although she had the authority to correct the violations, she failed to do so and allowed the violations to stand."  (*Id.* at Page ID#6.)

Plaintiff alleges that Defendant Hoffner has never designated Defendant Cline, who is a corrections officer, to act as an MDOC Inspector for purposes of monitoring J-Pay transactions.  Defendant Hoffner knew because of her high ranking position that her staff were violating MDOC policy and Plaintiff's rights.  Defendant Hoffner did nothing to stop the conduct of her staff nor did she ever formally assign Defendant Cline the task of being a J-Pay Inspector.

To date, Plaintiff has lost $1,800 "because of the illegal conduct of the [D]efendants which violated MDOC policy and state law."  (*Id.* at Page ID#6.)

As relief, Plaintiff seeks compensatory and punitive damages, and injunctive relief.

---

funds.  Additionally, Plaintiff never received a Notice of Rejection regarding the funds.

      II.     <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if "it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

      A.     § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed

by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

1. Lack of Allegations

Plaintiff fails to make specific factual allegations against Defendants Beckwith and Hoffner, other than his claim that they denied his grievances regarding the issuance of the NOIs and the subsequent administrative hearings. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Beckwith and Hoffner engaged in any active unconstitutional behavior. Accordingly, he fails to state a § 1983 claim against them.

2. Due process

Plaintiff alleges that Defendant Cline violated his right to due process and his equal protection rights by "impersonating an MDOC Inspector" and issuing numerous NOIs without authorization and in violation of MDOC policy and for failing to provide Plaintiff with Notices of Rejection. (Compl., docket #1, Page ID#6.) Plaintiff alleges that Defendant Houtz violated his due process rights by conducting numerous administrative hearings on the NOIs issued by Defendant Cline in violation of MDOC policy.

The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). Plaintiff's claim is, in essence, a claim for numerous violations of MDOC policy. Claims under § 1983 may not be based upon alleged violations of state law, nor may federal courts order state officials to comply with their own law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Plaintiff does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir. 1994).

Moreover, it is clear that Plaintiff received due process of law. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property,

and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). Plaintiff was provided with an NOI and obtained an administrative hearing prior to Defendants taking any action against his trust fund account. Plaintiff was present at the administrative hearings and given an opportunity to object. Moreover, although Plaintiff claims Defendant Houtz did not adhere to MDOC policy when conducting the NOI hearings, he does not set forth any policies that Defendant Houtz violated during the hearings nor does he allege any facts suggesting Defendant Houtz was biased or treated him unfairly. Although Plaintiff is unhappy with the outcome of the hearings, it is clear that he received the process to which he was entitled.

Even if the conduct of Defendants Cline and Houtz violated Plaintiff's right to due process, his claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v.*

*Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claim will be dismissed.

### 3. Equal Protection

Plaintiff alleges that his equal protection rights were violated by Defendants Houtz and Cline based on the same conduct upon which he bases his due process claim.

The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. To establish an equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the

state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff's equal protection claim merits little discussion because Plaintiff fails to allege that he has been treated differently then similarly situated prisoners. In the absence of any allegations suggesting disparate treatment, Plaintiff fails to state an equal protection claim.

4.      Conspiracy

Plaintiff alleges that Defendants conspired under 42 U.S.C. §§ 1983 and 1985. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Similarly, to state a claim for conspiracy under § 1985, a plaintiff must allege facts showing that (1) two or more persons conspired (2) for the purpose of depriving the plaintiff of the equal protection of the laws and (3) that the conspirators committed an overt act (4) that injured the plaintiff. *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005); *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)). The § 1985 plaintiff also must demonstrate that the conspiracy was motivated by a class based animus, such as race. *Radvansky*, 395 F.3d at 314; *Johnson*, 40 F.3d at 839; *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996). Under both § 1983 and § 1985, a plaintiff must plead

with particularity, as vague and conclusory allegations unsupported by material facts are insufficient to state a claim. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102,106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996).

Plaintiff's allegations are entirely conclusory. He fails to state any facts to support his claim that the Defendant conspired together with the objective of depriving him of a federal right. Indeed, Plaintiff fails to sufficiently allege that Defendants denied him of any federal right. Accordingly, Plaintiff fails to state a conspiracy claim under either § 1983 or § 1985.

      B.    RICO

Plaintiff alleges that Defendants engaged in a conspiracy to violate MICH. COMP. LAWS § 750.175 by embezzling Plaintiff's prison trust funds. Additionally, Plaintiff alleges that the Defendants deprived Plaintiff of his property by way of wire fraud.

Section 1964(c) of RICO, the provision upon which Plaintiffs' claim is founded, provides for a private cause of action:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c)(1982). Section 1962 makes it illegal to engage in a pattern of racketeering activity. 18 U.S.C. § 1962(c)(1982). "Racketeering activity" is defined in section 1961(1) in terms of a long list of federal and state crimes, including mail fraud, 18 U.S.C. § 1341, and wire fraud, 18

U.S.C. § 1343. A "pattern of racketeering activity" requires at least two acts of racketeering activity within a ten year period, 18 U.S.C. 1961(5), generally referred to as the "predicate acts" or "predicate offenses" underlying the RICO claim.

The Sixth Circuit and other federal courts consistently have rejected RICO claims concerning prison conditions. *See, e.g.*, *Hyland v. Martin*, No. 00-1269, 2000 WL 1647952, at *1 (6th Cir. Oct. 25, 2000) (affirming dismissal of prisoner RICO conspiracy claim regarding restrictions imposed on photocopying credit card)*; see also Jenkins v.C.S.C./C.C.C.F. Corr. Services Corp.*, No. 99-1518, 2000 WL 1179772, at *1 (10th Cir. Aug. 21, 2000) (dismissing prisoner RICO claim alleging embezzlement from inmate accounts); *Petersen v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998) (affirming dismissal of RICO claims alleging warden accepted bribes from prison food services company); *Taylor v. Ornoski*, No. C 06-2224, 2006 WL 1646148 (N.D. Cal. June 14, 2006) (dismissing prisoner RICO claims seeking to challenge regulations restricting vendors who provide telephone service to inmates).

Plaintiff's conclusory allegations of embezzlement and wire fraud fail to establish predicate acts upon which to base a RICO claim. *See Iqbal*, 556 U.S. at 677-79. First, Plaintiff fails to adequately support his wire fraud claim. The only basis for Plaintiff's wire fraud claim is that J-Pay is a service that allows funds to be deposited to prisoner's trust accounts via electronic wire transfers. Plaintiff's contention that any subsequent handling of funds deposited via J-Pay should be considered wire fraud and a predicate act is simply unsupportable. Second, assuming embezzlement is a sufficient predicate act under RICO, Plaintiff fails to alleges facts sufficient to support an embezzlement claim. MICH. COMP. LAWS § 750.175 provides, in pertinent part, that:

> [a]ny person holding any public office in this state, or the agent or servant of any such person, who knowingly and unlawfully appropriates to his own use, or to the

use of any other person, the money or property received by him in his official capacity or employment, of the value of 50 dollars or upwards shall be guilty of a felony .…

Plaintiff does not even suggest that Defendants allegedly appropriated Plaintiff's funds for their own use or the use of another person. Indeed, the exhibits attached to Plaintiff's complaint belie such a claim. (*See* Ex. to Compl. docket #1-1, Page ID#23 (stating that funds should be returned to original depositor).)

Additionally, Plaintiff has failed to allege facts to establish the existence of an enterprise. Plaintiff merely alleges that "Defendants are a group of persons associated together for a common purpose of engaging in a course of conduct to deprive Plaintiff of his property by way of wire fraud, constituting an association in fact." (Compl., docket #1, Page ID#8.) However, to satisfy the enterprise requirement, an association-in-fact must be an ongoing organization, its members must function as a continuing unit, and it must be separate from the pattern of racketeering activity in which it engages. *United States v. Turkette,* 452 U.S. 576, 583 (1981). Plaintiff has not alleged any activity that would show ongoing, coordinated behavior among the Defendants that would constitute an association-in-fact. Accordingly, Plaintiff's RICO claim will be dismissed.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no

good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  November 5, 2014              /s/ Janet T. Neff
                                      Janet T. Neff
                                      United States District Judge